Brian A. Ertz (ISB No. 9960)
brian@ertzjohnson.com
Eileen R. Johnson (ISB No. 9935)
eileen@ertzjohnson.com
ERTZ JOHNSON LLP
P.O. Box 665
Boise, Idaho 83701
(208) 779-2929 (Telephone)
(208) 416-6665 (Fax)

Scott Rose (ISB No. 4197)
Scott Rose, P.C.
Boise, Idaho 83702
(208) 342-2552 (Telephone)
scott@idahoiplaw.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| **AHNIAH SELENE**, | Case No. 1:24-cv-70 |
| *Plaintiff,* | |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| **PARKLANE MANAGEMENT COMPANY, LLC; PARKLANE IDANHA ASSOCIATES, LLC; IDANHA ASSOCIATES, LLC; KENNETH G. HOWELL; ABC HOWELL, LLC; RENTAL HOUSING, LLC** and **JOHN AND JANE DOES I-X** Whose Identities Are Unknown, | |
| *Defendants.* | |

COMES NOW the Plaintiff, AHNIAH SELENE, by and through his counsel; Brian A. Ertz and Eileen Johnson of Ertz Johnson LLP, and Scott Rose of Scott Rose, P.C.; for causes of action against Defendants, complaining and alleging as follows:

## I.   <u>INTRODUCTION</u>

This action seeks monetary, declaratory, and injunctive relief, alleging that Plaintiff has been injured, and will continue to be injured, as a result of Defendants' repeated, ongoing, and current pattern and practice of (1) housing discrimination on the basis of disability in violation of the Federal Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. § 3601 *et seq.*; (2) unlawful coercion, intimidation, threat, and interference with the exercise or enjoyment of Plaintiff's rights under the FHHA; (3) failure and/or refusal to make residential repairs pursuant to I.C. § 6-320; (4) breach of contract; (5) Repeated, outrageous, unconscionable, and wanton unfair or deceptive acts and practices in the conduct of their trade or commerce as prohibited by the Idaho Consumer Protection Act, I.C. § 48-6001 *et seq.*; and (6) negligence. Plaintiff also seeks punitive damages against Defendants to punish and deter Defendants given Plaintiff's previous and ongoing efforts have been ignored, Defendants' wanton negligence is unconscionable and repeated, and Defendants' violations exhibit a reckless disregard for Plaintiff's physical safety and rights under the law.

## II.   <u>JURISDICTION AND VENUE</u>

1.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this action arises under the laws of the United States, namely 42 U.S.C. §§ 3604, 3617, and 3613. This Court has supplemental jurisdiction to hear and determine Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 as those claims are related to Plaintiffs' federal law claims and arise out of a common nucleus of related facts. Plaintiffs' state law claims arise

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 1

under the Idaho Consumer Protection Act, I.C. § 48-6001 *et seq.*; Idaho Code § 6-320; and at common law. Plaintiffs' state law claims are related to the federal law claims such that those claims form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in this District.

3.      Based on the allegations set forth herein, the Court has personal jurisdiction over all Defendants in this action.

### III.    PARTIES

4.      Plaintiff AHNIAH SELENE ("Ahniah") is now, and at all times relevant herein was, a resident of Ada County, State of Idaho.

5.      Defendant PARKLANE MANAGEMENT COMPANY, LLC (hereinafter "Defendant Parklane Management") is now, and at all times relevant herein was, an Idaho limited liability company doing business in Ada County, State of Idaho.

6.      Upon information and belief, Defendant Parklane Management's sole member is Rental Housing, LLC, an Idaho limited liability company doing business in Ada County, State of Idaho.

7.      Defendant Parklane Management manages the property that is the subject of Plaintiff's allegations set forth herein, located at 928 W. Main Street, Boise, Idaho.

8.      Defendant PARKLANE IDANHA ASSOCIATES, LLC (hereinafter "Parklane Idanha") is now, and at all times relevant herein was, an Idaho limited liability company doing business in Ada County, State of Idaho.

9.      Upon information and belief, Defendant Parklane Idanha's sole member is Rental Housing, LLC.

10.      Defendant IDANHA ASSOCIATES, LLC (hereinafter "Defendant Idanha") is now, and at all times relevant herein was, an Idaho limited liability company doing business in Ada County, State of Idaho.

11.      Defendant Idanha owns the property that is the subject of Plaintiff's allegations set forth herein, located at 928 W. Main Street, Boise, Idaho.

12.      Upon information and belief , Defendant Idanha's sole member is Rental Housing, LLC.

13.      Defendant KENNETH G. HOWELL ("Defendant Howell") is now, and at all times relevant herein was, a resident of Ada County, State of Idaho.

14.      Defendant Howell is the managing member of ABC HOWELL, LLC, ("ABC Howell"), an Idaho limited liability company doing business in Ada County, State of Idaho.

15.      Upon information and belief, ABC Howell is the sole member of RENTAL HOUSING, LLC ("Defendant Rental Housing"), an Idaho limited liability company doing business in Ada County, State of Idaho.

16.      Defendant Howell purports to own Defendant Parklane Management.

17.      At all times relevant herein, Defendant Parklane Management was acting as the agent of Defendant Howell directly and/or through business entities Defendant Howell controlled.

18.      At all times relevant herein, Defendant Parklane Management was acting as the agent of Defendant Parklane Idanha.

19.      At all times relevant herein, Defendant Parklane Management was acting as the

agent of Defendant Idanha.

20.     At all times relevant herein, Defendants Parklane Management, Parklane Idanha, and Idanha, were acting as the agent of Defendant Rental Housing.

21.     At all times relevant herein, Rental Housing was acting as the agent of Defendant ABC Howell.

22.     At all times relevant herein, ABC Howell was acting as the agent of Defendant Howell.

23.     Defendant Howell is liable for the acts and omissions of Defendant Parklane Management and Idanha Associates pursuant to the doctrine of *respondeat superior*.

24.     Defendants JOHN and JANE DOES ("Does") are unidentified natural persons, corporations, trusts, partnerships, joint ventures, associations, and/or any other artificial, business, or legal entity causing or contributing to Plaintiff's damages as described herein.

## IV.     STATEMENT OF FACTS

25.     Plaintiff Ahniah is a person with a disability pursuant to the Fair Housing Act. Ahniah is a quadriplegic who requires the use of an electric wheelchair.  Ahniah is a very active and independent individual.

26.     Ahniah rents a second-floor apartment, ("Apartment"), in a six-story building located at 928 W. Main Street in downtown Boise, Idaho (the "Building" or "Idanha"), with assistance from a government low-income housing credit program.

27.     Ahniah has leased the one-bedroom apartment since September 2016.

28.     Ahniah's tenancy is governed by the Housing Choice Voucher ("HCV") program regulations at 24 CFR Part 982.

29.     Plaintiff Ahniah and Defendants' participation in the HCV program is administered by a public housing authority ("PHA"), in this case the Boise City/Ada County Housing Authorities ("BCACHA").

30.     As a part of the government low-income housing credit program, Defendant Parklane Management entered into a Housing Assistance Payments Contract ("HAP Contract") with BCACHA in addition to Defendant Parklane Management entering into a contract lease with Ahniah.

31.     As a part of the government low-income housing credit program and the HAP Contract, Defendant Parklane Management must meet certain Housing Quality Standards ("HQS"). see 24 CFR § 982.401. HQS establish minimum criteria for the health and safety of program participants.

32.     The Housing Quality Standards that Defendants are legally obliged to meet include requirements that the rental units be accessible to people with disabilities and the elevators and lifts be working safely.

33.     Aside from his wheelchair, Ahniah requires a specialized bed that operates to prevent bed sores, circulation problems, and other potentially dangerous conditions secondary to his disability. Ahniah also requires the assistance of in-home care providers.

34.     Ahniah has a service dog, ("Isabella"), who requires multiple trips outside each day to relieve herself.

35.     The apartment building is over a century old; thus, one must climb a stairway to reach the entrance to the building's main lobby.

36.     The entrance is approximately five (5) feet above sidewalk level.

37.     An electric lift is located next to the entry stairway to provide access from

sidewalk level to the building's main lobby ("Wheelchair Lift") for individuals unable to use the entry stairway.

38.     The building's single elevator travels between the building's basement and the sixth floor of the building but does not allow access to sidewalk level.

39.     Ideally, a wheelchair-bound individual can utilize the Wheelchair Lift to move between the sidewalk level and the main floor of the building to reach the elevator.

40.     Indeed, Ahniah relies on the elevator and Wheelchair Lift to live independently.

**April 2017 Wheelchair Lift Outage**

41.     On or about April 3, 2017, the Wheelchair Lift malfunctioned or became otherwise inoperable for a full month.  On that day, Ahniah became trapped inside the Wheelchair Lift.  The doors would not open and the buttons did not work.

42.      Ahniah called the building's property management company, Defendant Parklane Management, and had to leave a message for assistance because there was no answer.

43.     Ahniah was later freed from the Wheelchair Lift by Defendant Parklane Management's maintenance employee.

44.     At some point, Defendant Parklane Management instructed Ahniah to use the basement freight lift ("Freight Lift") as an alternative to the inoperable Wheelchair Lift but advised Ahniah that Defendant Parklane Management would require at least twenty-minute notice each time Ahniah intended to leave or return to the building in order to assist him.

45.     For a full month, Ahniah was unable to come and go from his home as he pleased.

46.     To use the Freight Lift, Ahniah must contact Defendant Parklane Management

and wait for Defendant's employee to arrive.

47.     Ahniah then rides the elevator to the building's dank and dimly lit basement.

48.     From there, Ahniah carefully maneuvered his wheelchair down a narrow passage way and around a sharp corner, while maneuvering to avoid the somewhat haphazardly stored miscellaneous property, maintenance equipment, beer kegs, and stacks of boxes.

49.     On one occasion, the stacked items toppled onto Ahniah when his wheelchair bumped into the stack.

50.     The basement Freight Lift consists of a platform that is scarcely larger that Ahniah's wheelchair and lacks a railing or other safety barrier.

51.     Indeed, a sign posted in the Freight Lift explicitly states "WARNING: Employees, personnel, and all individuals are STRICTLY PROHIBITED from riding on the mechanical lift." (Emphasis in original.)

52.     The Freight Lift is controlled by a wall switch and requires Defendants' employee to operate it.

53.     As the Freight Lift moves between the basement floor and the gated door to the alley next to the building, Ahniah is in danger of rolling off or falling from the platform to the basement's cement floor eight to ten feet below.

54.     When Ahniah wished to return to his home, he had to again contact Defendant Parklane Management in advance, wait for Defendant's employee to arrive to lower Ahniah to the basement floor from the alley doorway, and maneuver his way back to the elevator to take Ahniah to the second floor.

55.     Between April 3, 2017 and May 5, 2017, Ahniah contacted Defendant Parklane Management on numerous occasions to ask for assistance in leaving and returning to his home,

COMPLAINT AND DEMAND FOR JURY TRIAL                                      Page 7

and to request immediate repair or replacement of the Wheelchair Lift.

56.     On one occasion Ahniah's chair tipped dangerously as he exited the Freight Lift out to the alley because Defendant Parklane Management's employee had raised the lift too high and the back of Ahniah's chair fell off the platform, leaving Ahniah in a dangerously precarious position until Defendant's employee ran upstairs, through the lobby, down the block, and around to the alley to maneuver Ahniah back onto all four wheels of his chair.

57.     On other occasions, Ahniah was stranded outside of the building.

58.     On one particularly cold evening when Ahniah was ill and had just returned from the hospital, Ahniah had to ask complete strangers from the bar next door to carry him and his wheelchair, weighing approximately 350 lbs., up the stairway to the main lobby of the building to reach the elevator because the Wheelchair Lift was inoperable.

59.     Ahniah is quickly susceptible to the effects of cold temperatures due to his disability and he simply could not wait outside for Defendant Parklane Management to assist him into the building.

60.     Ahniah felt humiliated each time he was forced to seek such assistance from strangers and frustrated that his repeated requests to Defendant Parklane Management for immediate repair of the Wheelchair Lift were seemingly disregarded.

61.     Over the course of April 2017, Defendant Parklane Management was repeatedly put on notice of the impacts to Ahniah's daily life caused by ongoing and repeated mechanical malfunctions of the elevator and the Wheelchair Lift.

62.     Defendant Parklane Management was on notice that its continued failure to repair or replace the Wheelchair Lift was depriving Ahniah of the right to the same conditions, privileges, and/or provision of services or facilities that other, ambulatory tenants enjoyed.

63.     Defendant Parklane Management continued, and continues, to subject Ahniah and other similarly situated tenants to dangerous, humiliating, and restrictive workarounds rather than replace the Wheelchair Lift in a timely manner.

## May 2017 Elevator Outage

64.     On or about May 5, 2017, the Wheelchair Lift began to operate, but with continued electrical malfunctions.

65.     Later that same day, the building's single elevator became inoperable and was not returned to full service until approximately May 30, 2017.

66.     During that time, all non-ambulatory tenants within the building were deprived of the means to travel safely between the main floor and the upper floors of the building and were instead forced to use the stairs, find another alternative, or simply stay home.

67.     Because Ahniah could not use the stairs, he was trapped on the second floor.

68.     Each day, Ahniah contacted Defendant Parklane Management to inquire regarding the elevator repair and to notify Defendant that the elevator outage was causing significant interruptions to Ahniah's life.

69.     After approximately seven (7) days without elevator service, Defendant Parklane Management advised Ahniah that its employees could carry Ahniah and his wheelchair up and down the stairs when needed, with notice provided to Defendant.

70.     On the first attempt, Ahniah was almost dropped out of his chair only three steps down from the second floor.

71.     He immediately advised Defendant Parklane Management's employees that it would be too dangerous for Ahniah and the employees to continue down the stairs.

72.     Ahniah was returned to the second floor where he remained.

73.     After several additional days of confinement to the second floor, Defendant Parklane Management advised Ahniah that it was arranging to move Ahniah to a hotel of Ahniah's choice due to continued delay in elevator repairs.

74.     Ahniah was amenable to the plan and suggested several local hotels that offered the level of accessibility Ahniah required.

75.      However, Defendants rejected each of Ahniah's hotel suggestions due to cost.

76.     On or about May 18, 2017, Defendant Parklane Management moved Ahniah to a local hotel of their choosing.

77.     Unfortunately, the hotel selected by Defendant Parklane Management required a keycard to enter the building.  Ahniah could not access the card reader due to his disability and the size of his wheelchair.  Because Ahniah again had to rely on the kindness of strangers to assist him in entering the building, he simply stayed in his room to avoid humiliation and uncertainty.

78.     Without his specialized bed to move and reposition him at night, Ahniah soon began to suffer skin damage, intense muscle pain, and increased spasticity.  The spasticity was especially alarming because it can quickly evolve into a potentially deadly condition, autonomic dysreflexia.

79.     After several days in the hotel, Defendants requested that Ahniah return to his apartment as the elevator was expected to be fixed within the following several days.

80.     Ahniah refused to return until the elevator was operable because he feared being trapped on the second floor of the Building.

81.     Approximately two days later, Defendant Parklane Management contacted

Ahniah to advise Ahniah that the elevator had been returned to service.

82.     Ahniah returned to his apartment on or about May 25, 2017 and found that the elevator was still malfunctioning.

83.     The elevator continued to malfunction in this manner until approximately May 30, 2017 when it was restored to full service.

84.     Notably, Defendant Parklane Management's records show that between approximately May 5 and May 30, 2017, while disabled tenants were confined to the upper floors of the building with Defendant's full knowledge, there were multiple periods of up to three or four days during which no work was being performed on the elevator due to unavailability of various parts and/or repair specialists.

85.     Moreover, Ahniah was informed by a Defendant Parklane Management employee that Defendant was choosing to forego weekend repair labor due to higher costs.

86.     During April and May 2017, the elevator and Wheelchair Lift continued to malfunction or breakdown, most notably in July, August, and September 2017; in February, November, and December of 2018; and sporadically until the present time.

87.     On one occasion Ahniah was using the Wheelchair Lift when it suddenly and unexpectedly dropped to the sidewalk, severely jolting Ahniah.

88.     Consistently, the door to the Wheelchair is difficult to open, requiring significant and prohibitive strength to gain access.

89.     Ahniah has also repeatedly advised Defendants that the Wheelchair Lift doors become stuck, and that the lift often requires the buttons inside and outside the lift to be pressed simultaneously, which is impossible for one person to do.

90.     Defendant Parklane Management has blamed Ahniah for "pilot error," even

when Defendant Parklane Management's employee had to free him from the Wheelchair Lift.

91.     The Wheelchair Lift is vented to the outside, so the occupant is subjected to the outdoor temperature.

92.     The Wheelchair Lift is located on the west side of the building.

93.     In Boise, Idaho, a person trapped in the Wheelchair Lift in the late afternoon in the summer months can experience temperatures quickly exceeding 100 degrees.

94.     There is no insulation in the lift and in the winter months, temperatures hover around and below the freezing mark.

**November 2018 Elevator Outage**

95.     On November 20, 2018 a representative of Defendant Parklane Management contacted Ahniah while Ahniah was out of his home and explained that the elevator was inoperable.

96.     Ahniah was forced to rely on others to retrieve personal belongings from his second story apartment so Ahniah could spend the night at a hotel.

97.     The next day, on November 21, 2018, Ahniah contacted Defendant Parklane Management and explained that he would not be able to remain at the hotel due to his need for the specialized bed in his apartment.

98.     Defendant Parklane Management told Ahniah that he could return to his home as the elevator was again operable.

99.     After returning to his home that day, while Ahniah was preparing a dish for his church's annual Thanksgiving meal, the elevator again ceased to function.

100.    When notified of the continued malfunction, Defendants informed Ahniah,

through counsel, that its agents would not work to fix the elevator given the holiday.

101.    On Thursday November 22, 2018, the elevator was still inoperable.

102.    Ahniah was trapped on the second floor of the Building and unable to contribute the meal he had prepared and unable to attend his church's annual Thanksgiving dinner given his inability to exit the Building.

103.    On November 23, 2018, Ahniah was able to get friends and neighbors to help him move to a hotel again when a maintenance man for Defendants instructed him that, although the elevator seemed to be working, he should stay at a hotel anyway in case problems with the elevator persisted.  Ahniah's friends moved Ahniah's specialized bed to the hotel.

104.    On or about November 30, 2018 Ahniah returned to his apartment as the elevator had been fixed.

105.    On December 4 and 5, 2018, the elevator sporadically performed or failed to perform.


**<u>Prior Lawsuit</u>**

106.    On February 24, 2019 Plaintiff Ahniah Selene filed suit against Defendants for their violations of the Fair Housing Act, 42 U.S.C. 3604, in the U.S. District Court – District of Idaho. See *Selene v. Parklane Mgmt Co.*, U.S. Dist. of Idaho Case No. 1:19-cv-00069-CWD; See particularly *First Amended Complaint and Demand for Jury Trial*, ECF Dkt. No. 26 ("2019 Lawsuit").

107.    During the pendency of the 2019 Lawsuit, ongoing outages of the Wheelchair Lift and Elevator plagued the Idanha.

108.    On March 8, 2019 the wheelchair lift ceased function, Ahniah was stuck in the

building and prevented from attending and testifying during a hearing at the Idaho Legislature that he had planned and prepared testimony to present at.

109.    Upon information and belief, on or around April 4, 2019, the elevator ceased proper function, trapping a tenant of the Idanha Building inside.

110.    Upon information and belief, on or around the latter half of April 2019 through mid-March 2019, the elevator and/or Wheelchair Lift servicing the Idanha Building periodically ceased proper function, requiring tenants of the Idanha to utilize the stairs and/or other work-arounds to gain ingress/egress to and from their homes.

111.    On or about Monday April 15, 2019 the Wheelchair Lift sporadically ceased function. Defendant Parklane Management instructed Ahniah that the Wheelchair Lift could not be fixed until Wednesday or Thursday of that week. Ahniah was instructed to use the basement Freight Lift, described *supra*, during the outage.

112.    On or about May 19, 2019 the elevator ceased function.

113.    On or about May 19, 2019 Ahniah was moved to a hotel.

114.    On or about the week beginning May 20, 2019, Ahniah was told that he would need to prepare to move again, to an alternate apartment located about two (2) miles from the Idanha Building.

115.    On May 28, 2019, through counsel, Ahniah learned that the cause of the May 19 elevator malfunction had not then been diagnosed.

116.    On May 31, 2019, through written correspondence provided through counsel, Defendants announces that "Work is being performed on the elevator that will make it unavailable to tenants for significant periods of time. The work will be over a period of weeks, the exact duration is difficult to predict."

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 14

117.    The May 31, 2019 correspondence detailed the general plan that Defendants would move Ahniah's belongings to a new apartment ("Hillcreek Apartments") in one trip, that it may be necessary to move Ahniah yet again at the beginning of July, and that once the elevator was back in regular service Ahniah can choose whether to stay at a new apartment or move back to his existing apartment at the Idanha Building.

118.    In December 2019 the 2019 Lawsuit was resolved. See *Selene v. Parklane Mgmt Co.*, U.S. Dist. of Idaho Case No. 1:19-cv-00069-CWD, ECF Dkt. No. 33.

119.    Sporadic outages of the elevator and/or the Wheelchair Lift continued to plague the Idanha in 2020, 2021, and 2022.

120.    On some occasions the issues would be resolved quickly, on other occasions they persisted for greater amounts of time. At all times it has been impossible for Ahniah to accurately gauge or predict the expediency of accommodating Defendant Parklane Managements' promises that the issues would be resolved shortly versus the arduous effort of enforcing Ahniah's rights.

121.    On all occasions, Defendants have consistently shifted the burdens, costs, and consequences of their own failure to repair and/or replace the Wheelchair Lift and elevator onto Ahniah.

122.    On information and belief, Defendants' own agents have advised that the Wheelchair Lift cannot be repaired to ensure consistent function free of reasonably anticipated, even inevitable, malfunction.

123.    On information and belief, Defendants' own agents have advised Defendants that the Wheelchair Lift needs to be replaced and that piecemeal repairs are not likely to restore the Wheelchair Lift to reasonably reliant performance.

COMPLAINT AND DEMAND FOR JURY TRIAL                                        Page 15

124.    On information and belief, Defendants—including Defendant Kenneth Howell personally—has repeatedly disregarded their own professional agents' insistence that the Wheelchair Lift and/or elevator needs to be replaced, opting instead to make temporary, ephemeral, cheaper fixes knowing that there was a likelihood that the cheaper fixes would either inevitably fail, or that other problems would manifest given the age and condition of the Wheelchair Lift.

125.    On information and belief, Defendants' disregard and refusal to implement the recommendations of their own agents has caused multiple agents to refuse to work with Defendants, limiting Defendants' options for service of the elevator and/or Wheelchair Lift at the Idanha to one or two service contractors in the Treasure Valley.

126.    The aforementioned limitation on available service technicians has contributed to Defendants' multiple failures to timely repair the Wheelchair Lift and elevator at the Idanha, has contributed to unreasonable and unlawful delays, and is a proximate cause of Ahniah's ongoing suffering and injuries complained of herein.

127.    Defendant Kenneth Howell, and all business entity defendants under Mr. Howell's control, have an ongoing pattern and business practice of cutting corners on repair, failing to reasonably maintain, and underservicing their real estate holdings, creating unsafe and hazardous conditions. The pattern and practice has held for, among other of Defendants' real-estate holdings, the Idaho Building, the Union Block Building, the Idanha Building.

128.    Upon information and belief, Defendants have realized and enjoyed immense economic advantage by unlawfully cutting corners, delaying repairs, shirking contractual and regulatory duties, underservicing, and by maintaining their real estate holdings in unsafe and hazardous conditions.

## 2023 Wheelchair Lift Outage

129.    On or about May 19, 2022 the exterior button to the Wheelchair Lift would not function. The Wheelchair Lift was not operational from May 18 to May 21, 2022.

130.    On or about November 16 through November 23, 2022 the elevator would not function.

131.    On or about December 21, 2022 at about 4:00 a.m. Ahniah's apartment was flooded by an event originating outside of Ahniah's unit. The flood submerged and saturated the floor of Ahniah's unit.

132.    From about December 21, 2022 through December 24, 2022 Ahniah's apartment was uninhabitable, Defendants deployed a high-powered fan in an attempt to dry the wet flooring and carpet within the apartment.

133.    On December 25, 2022 Ahniah submitted a maintenance request because the door to the exterior Wheelchair Lift would not fully close.

134.    On December 30, 2022 Ahniah's apartment unit flooded. Ahniah made another maintenance request to Defendants.

135.    On or about January 1 or January 2, 2023 the exterior Wheelchair Lift would not function, Ahniah was trapped within his apartment, inundated by a mildew smell on account of the prior flooding. Ahniah notified Defendants demanding repair.

136.    On information and belief, on or about January 3, 2023 an agent of BCACHA contacted Defendants demanding repair of the Wheelchair Lift.

137.    On or about January 4, 2023 Ahniah again notified Defendants demanding repair of the Wheelchair Lift.

138.    On or about January 5, 2023 Ahniah again notified Defendants that the

Wheelchair Lift was not functioning and requested assistance to move to a hotel during the pendency of the fix.

139.    On or about January 5, 2023 Defendants declined Ahniah's request to be moved to a hotel, stating that the Wheelchair Lift would be fixed the following day.

140.    The Wheelchair Lift was not fixed nor otherwise functional on January 6, 2023.

141.    On or about January 10, 2023 an agent of Defendants stated that the Wheelchair Lift is not repairable and that Defendants did not have a timeline for when they would have an operating lift. The agent declined to allow Ahniah to stay at a hotel downtown and advised Ahniah that they would transfer him to another property.

142.    On or about January 11, 2023, under duress—marooned in his apartment with his request to stay at a hotel downtown denied him, Ahniah agreed to look at an alternative apartment.

143.    On or about January 11, 2023 Ahniah required hospitalization and was extracted from the Idanha Hotel using the basement Freight Lift, a utility lift that has no guard rails, is unsafe, is not used nor intended for lifting people, and is clearly marked as being prohibited for human use. *Supra*.

144.    On or about January 12, 2023 Ahniah met with an agent of Defendants at an alternative apartment, but the apartment would not spatially accommodate Ahniah's medical and disability related needs.

145.    On or about January 16, 2023 an agent of Defendants measured Ahniah's existing apartment.

146.    On or about January 19, 2023 an agent of Defendants contacted Ahniah to schedule a time to visit alternative apartments.

147.    On or about January 23, 2023 Ahniah and an agent of Defendants visited another alternative apartment, but again the apartment would not spatially accommodate Ahniah's medical and disability related needs.

148.    On or about January 30, 2023, still marooned in his apartment with the Wheelchair Lift inoperable, Ahniah emailed Defendants and requested a reasonable accommodation for an alternative unit that met his disability related needs and made demand that if they did not find him an alternative unit that met his disability needs within three days, he demanded to stay in a hotel with Defendants covering the cost during the pendency of repairs to the Wheelchair Lift.

149.    On January 31, 2023 Defendants responded indicating that they would try to look for alternative units.

150.    On February 1, 2023 Ahniah and Defendants scheduled a showing for the following day.

151.    On February 2, 2023 Defendants cancelled the scheduled showing and rescheduled for the following day.

152.    On February 3, 2023 Defendants contacted Ahniah and cancelled the showing, insisting that the Wheelchair Lift would be operational in the next few days and that Ahniah would not be allowed to stay in an alternative unit.

153.    That same day, February 3, 2023 Ahniah responded to Defendants and demanded to stay at a hotel at Defendants' cost.

154.    That same day, February 3, 2023—a Friday—Defendants responded to Ahniah and denied his reasonable accommodation request and declined to provide a hotel during the pendency of the repairs.

155.    The Wheelchair Lift was not repaired in the following days.

156.    On February 6, 2023 Plaintiff Ahniah, through counsel, served Defendants with written demand to make repairs and corrections to the Wheelchair Lift, pursuant to Idaho Code § 6-320.

157.    On February 6, 2023 Plaintiff, through counsel, demanded that Defendants provide Ahniah with a hotel where the Wheelchair Lift or the elevator ceased to function.

158.    On February 6, 2023 Plaintiff, through counsel, reiterated Ahniah's reasonable accommodation requests for Defendants to move Ahniah to a new unit that has two (2) bedrooms, or a single bedroom of equal or greater size to his existing unit, or make funds available for Ahniah to stay at a hotel in downtown Boise at Defendants' up-front cost during the pendency of the Wheelchair Lift outage.

159.    On February 7, 2023 an agent for Defendants denied Ahniah's request for a reasonable accommodation insisting that the Wheelchair Lift would be fixed within three (3) days and that "we are going to wait until we see if the current effort to fix the lift is successful."

160.    Ahniah remained marooned in his apartment with no reasonable, safe means for ingress or egress during the pendency of Defendants' wait.

161.    On February 10, 2023 an agent of Defendants indicated that the Wheelchair Lift would not be operational for another week and attempted to steer Ahniah into a permanent tenancy at an alternative apartment outside of the downtown area.

162.    On or about February 13, 2023 Ahniah, through counsel, again demanded for Defendants to proffer the cost of a hotel during the pendency of the fix of the Wheelchair Lift, and Defendants again refused to do so citing the imminence of the fix of the Wheelchair Lift.

163.    On February 27, 2023 Defendants notified Ahniah, through counsel, that the

Wheelchair Lift was not yet fixed, but that it may be fixed at some time between the coming week and March 31, 2023.

164.    Upon information and belief, Defendants were aware that the Wheelchair Lift would not be permanently fixed in the coming weeks.

165.    In response, on February 27, 2023 Ahniah, through counsel, again made request for a reasonable accommodation to stay at a hotel during the pendency of the fix of the Wheelchair Lift.

166.    On February 28, 2023 Defendants again denied Ahniah's request for a reasonable accommodation. Instead, Defendants insisted Ahniah stay at an alternative apartment ("Hillcreek Apartment").

167.    The next day, on March 1, 2023 Ahniah, having no other option than to remain marooned in his second floor Idanha apartment or to move as instructed, scheduled an inspection of the Hillcreek Apartment.

168.    On or about March 3, 2023 the elevator ceased function. Defendants placed a sign on the elevator that read "ELEVATOR OUT OF ORDER Vendor will assess before End of day 3-3-23." That same day Ahniah, through counsel, served on Defendants a three-day notice and demand to make repairs and corrections to the elevator pursuant to Idaho Code § 6-320.

169.    On March 6, 2023 Ahniah was moved to the Hillcreek Apartment to temporarily await a fix to the Wheelchair Lift.

170.    On or about March 6, 2023 while taking Ahniah out of his Idanha Apartment, an agent for Defendant Parklane Management complained that moving property was not his job and instructed Ahniah that he must choose a limited number of belongings to accompany him to the Hillcreek Apartment.  Ahniah complied in protest.

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 21

171.    Defendant Parklane Management's employee's complaint humiliated Ahniah.

172.    Upon arrival at the Hillcreek Apartment an agent of Defendants presented Ahniah with paperwork and instructed Ahniah to sign the paperwork. The paperwork was a new lease agreement establishing a new tenancy at the Hillcreek Apartment permanently.

173.    Ahniah refused to sign the new tenancy agreement for the apartment at the Hillcreek, explaining to Defendant's agent that he was told the stay would be a matter of days, perhaps a couple of weeks, during the pendency of a promised fix to the Wheelchair Lift, at which time Ahniah would return to his Apartment at the Idanha.

174.    Defendants tried to pressure Ahniah to sign the new tenancy, explaining that unless he signed a new lease for the tenancy at the Hillcreek Apartment, Ahniah's postage would not be delivered directly to him.

175.    Ahniah refused to sign the new tenancy agreement for the Hillcreek Apartment.

176.    Following Ahniah's temporary move to the Hillcreek Apartment, Defendant Parklane Management increased rent charged to Ahniah's tenancy. For months thereafter, Ahniah's balance on account indicated an increased amount owing and purported to state an ongoing delinquency. Ahniah was also assessed a cost for remediation of the previous flooding event in his Apartment.

177.    Ahniah has not received postage at the Hillcreek Apartment and has been forced to retrieve his postage by relying upon friends and service providers.

178.    Prior to and following Ahniah's move to the Hillcreek Apartment, agents of the Boise City Ada County Housing Authority corresponded with Defendant Parklane Management and Defendant Howell to monitor progress on the repairs being made to the elevator and the Wheelchair Lift and ensure the tenancy's compliance with Housing Quality Standards.

179.     Upon information and belief, at the beginning of 2023 the BCACHA made demand for certain documents related to Defendants' purported efforts to repair the Wheelchair Lift and elevator.

180.     Upon information and belief, Defendants were evasive and uncooperative with BCACHA, failing and/or refusing to provide BCACHA with the documents requested.

181.     Upon information and belief, BCACHA abated its contribution to the payment of rent for Ahniah's tenancy at the beginning of 2023.

182.     By May 2023 the Wheelchair Lift was still not repaired and not operational.

183.     Upon information and belief, on or around July 2023 a representative of a vendor that Defendants relied upon to make repairs to the Wheelchair Lift informed BCACHA that the Wheelchair Lift would not properly function, was not capable of being repaired to a reasonably reliable measure of performance, and that the Wheelchair Lift would need to be replaced entirely.

184.     Upon information and belief Defendants had been advised by their own agents, vendors and/or contractors that the Wheelchair Lift needed to be replaced on multiple occasions preceding the 2023 outage, again during the 2023 Wheelchair Lift outage, and demand was made by BCACHA to Defendants to *replace* the Wheelchair Lift, but Defendant Kenneth Howell has refused to replace the Wheelchair Lift.

185.     On information and belief, on November 1, 2023 BCACHA sent notice to Defendants demanding replacement of the Wheelchair Lift and independent verification that the lift door and alarm system in the Wheelchair Lift properly comply with standards by November 30, 2023 or BCACHA would have no choice but to abate its payment of rents for all tenancies at the Idanha on HUD Section 8 Vouchers.

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 23

186.     Defendants did not comply with BCACHA's November 1, 2023 notice.

187.     On information and belief, on December 1, 2023 BCACHA abated rental payments for all residential tenancies at the Idanha supported by BCACHA's administration of Section 8 Vouchers.

188.     Defendant Parklane Management has continued to send Ahniah invoices for rent at his Idanha Apartment despite his inability to access, occupy, or use the Idanha Apartment.

189.     Upon information and belief from on or about January 26, 2024 until February 2, 2024 the Elevator at the Idanha ceased to function properly. During the outage, a non-ambulatory tenant became trapped in the basement of the Idanha and required third-party assistance to return to the main floor.

\*

190.     Lack of proper ingress/egress at the Idanha is extremely dangerous to Ahniah, and indeed to all disabled residents at the Idanha. Threat of fire, the impediment to emergency response times and access, among other practicable considerations given the aforementioned and ongoing circumstances creates a hostile and hazardous condition that can threaten the lives and safety of residents, particularly Ahniah.

191.     To Ahniah's knowledge, despite a long history of malfunctions and breakdowns of the crucial mechanical infrastructure spanning years, Defendants have still not taken meaningful and necessary steps to overhaul or replace the elevator and/or replace the Wheelchair Lift sufficient to prevent recurrent malfunction since the events described above.

192.     Therefore, Ahniah is certain to be denied the safe and unrestrained access to his dwelling that the building's ambulatory tenants enjoy on an ongoing basis.

193.     For the '2023 Wheelchair Lift Outage' period alone Ahniah has been denied safe

and accessible housing at the Apartment for over one year. Ahniah has been moved to an apartment outside of the downtown area and is thus unable to freely enjoy the convenience of an independent life afforded the Idanha's proximity to public facilities, frequent and independently accessible social events, Ahniah's provision of medical services, among other independent activities. Leaving the Hillcreek apartment to go to appointments, visit friends and relatives, or otherwise engage in the community has become an arduous task, taking hours to prepare and additional time to make the commute.

194.    The ongoing and persistent malfunctions and breakdowns of the elevator and Wheelchair Lift have caused Ahniah severe emotional suffering, humiliation, loss of security, and the experience of terror. Ahniah has experienced severe depression, anxiety, fear, recurring nightmares including, as one example, that Ahniah is trapped in the Wheelchair Lift, on the Freight Lift, and in the elevator and cannot free himself.

195.    The ongoing and persistent malfunctions and breakdowns of the Elevator and Wheelchair Lift have caused Ahniah to be forced to call emergency response to gain egress from his Apartment and Ahniah has been subject to the humiliation, stress, and trauma of being removed from his Apartment by fire emergency response, on public display downtown.

196.    Defendants' treatment of Ahniah has been outrageous and cruel. Defendants and their agents have treated Ahniah like a bother, an inconvenience. Ahniah has been subject to the scheduling whims of Defendants' agents, often waiting hours or days for responses or attention that is only necessary because of Defendants' ongoing failure to repair/replace the Elevator and Wheelchair Lift.

197.    As a direct result of Defendants' aforementioned failures, Ahniah has been unable to attend significant life events including, for example, the birth of his niece, holiday

COMPLAINT AND DEMAND FOR JURY TRIAL                                        Page 25

gatherings, social events, church, civic demonstrations, Ahniah's provision of healthcare has been disrupted and interrupted.

198.    The ongoing and persistent malfunctions and breakdowns of the Elevator and Wheelchair Lift have severely impaired and limited Ahniah's lifestyle and enjoyment of life.

199.    Defendants are jointly and severally liable for Ahniah's damages incurred as described herein.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**For Violations of The Fair Housing Act**
42 U.S.C. § 3604
*By Plaintiff Against All Defendants*

200.    Plaintiff incorporates all preceding allegations herein by reference as though fully set forth herein.

201.    Plaintiff Ahniah has handicaps and had handicaps during his tenancy at Idahna and at all times relevant herein.

202.    Defendants injured Plaintiff Ahniah by committing discriminatory housing practices in violation of the Fair Housing Act, 42 U.S.C. §§ 3604 (f)(1), (f)(2), & (f)(3).

203.    Defendants have made unavailable or denied a dwelling to Plaintiff Ahniah because of Ahniah's handicap.

204.    Defendants have discriminated in the terms, conditions and privileges of the rental of a dwelling, and the services and facilities in connection therewith, on the basis of "handicap."

205.    Defendants knew or reasonably should have known of Plaintiff Ahniah's handicaps.

206.    Defendants' conduct and failures to act imposed different terms, conditions, and privileges relating to the rental of a dwelling because of Plaintiff Ahniah's handicap.

207.    Defendants' conduct and failures to act denied and limited services or facilities in connection with the rental of a dwelling.

208.    Defendants delayed or failed to conduct maintenance or repairs of a dwelling because of handicap.

209.    Defendants denied and limited services or facilities in connection with the rental of a dwelling because of handicap.

210.    Defendants' conduct and failures to act created a hostile and hazardous environment because of Plaintiff Ahniah's handicap.

211.    Defendants engaged in conduct relating to the provision of housing or services and facilities in connection therewith that otherwise makes unavailable or denies dwellings to persons with handicaps.

212.    Defendants' practice of failing to replace and/or make sufficient repair to lift and elevator parts and/or facilities sufficient to prevent anticipatable recurrent malfunction actually and predictably resulted in a disparate impact on a group of persons with handicaps.

213.    Defendants' practice of failing, refusing, and/or ignoring previous agreements and accommodations made between Defendants' and persons with handicaps actually and predictably resulted in disparate impact on a group of persons with handicaps.

214.    Accommodation of Ahniah's handicaps by making such repairs and corrections to Idanha's lift and elevator facilities such that would prevent anticipatable recurrence of lift and elevator malfunction was both reasonable and necessary to afford Ahniah an equal opportunity to use and enjoy the premises.

215.   Plaintiff Ahniah's requested accommodation of his handicap by funding his stay at a hotel during the pendency of any repairs to the Wheelchair Lift and/or the Elevator was both reasonable and necessary to afford Ahniah equal use of his dwelling.

216.   Plaintiff Ahniah's requested accommodation of his handicap by immediately providing him an alternative apartment sufficient to meet his medical and disability related needs during the pendency of any repairs to the Wheelchair Lift and/or the Elevator was both reasonable and necessary to afford Ahniah equal use of his dwelling.

217.   Plaintiff Ahniah requested that Defendants make these reasonable accommodations.

218.   Defendants, acting personally or through others, refused and continue to refuse to make reasonable accommodations of Ahniah's handicaps.

219.   Defendants, acting personally or through others, engaged in and continue to engage in discriminatory housing practices.

220.   As a result of the Defendants' conduct, Ahniah has suffered economic and noneconomic damages.

221.   As a result of the Defendants' conduct, Ahniah has suffered humiliation, loss of independence, and emotional distress resulting in anxiety, depression, irritability, insomnia, and frequent nightmares of being trapped in the lift.

222.   Defendants' conduct is repeated, flagrant, willful, and intentional and exhibits egregious, reckless and/or callous indifference for Ahniah's rights.

223.   Because Ahniah has been injured by Defendants' discriminatory housing practices, Ahniah is an aggrieved person.

224.   Plaintiff Ahniah is entitled to actual damages, general damages, and punitive

damages in an amount to be determined at trial and to recover his reasonable attorney's fees and costs pursuant to 42 U.S. Code § 3613(a)(1)(c).

## SECOND CAUSE OF ACTION

### For Violations of The Fair Housing Act
42 U.S.C. § 3617
*By Plaintiff Against All Defendants*

225.    Plaintiff incorporates all preceding allegations herein by reference as though fully set forth herein.

226.    Defendants coerced, intimidated, threatened or interfered with Plaintiff Ahniah in his exercise or enjoyment of rights granted or protected by 42 U.S.C. § 3604(f) or on account of Plaintiff Ahniah having exercised or enjoyed such rights.

227.    Defendants, acting personally or through others, engaged in and continued to engage in discriminatory housing practices.

228.    Because Plaintiff Ahniah has been injured by Defendants' discriminatory housing practices, Plaintiff Ahniah is an aggrieved person.

229.    Plaintiff Ahniah is entitled to actual damages, general damages, and punitive damages in an amount to be determined at trial and to recover his reasonable attorney's fees and costs pursuant to 42 U.S. Code § 3613(a)(1)(c).

## THIRD CAUSE OF ACTION

### Idaho Code § 6-320
*By Plaintiff Against Defendants Parklane Management Company & Howell*

230.    Plaintiffs incorporate by reference each allegation contained herein as if set forth here verbatim.

COMPLAINT AND DEMAND FOR JURY TRIAL                    Page 29

231.   Defendant Parklane Management Company entered into a residential lease agreement with Plaintiff, namely the tenancy and Ahniah's lease of the second story apartment located at 928 W. Main Street.

232.   The agreement between Plaintiff and Defendant Parklane Management Company and Howell constitutes a legal, binding, and enforceable residential tenancy.

233.   Defendant Parklane Management Company and Defendant Howell failed to maintain in good working order electrical, plumbing, heating, ventilating, cooling, or sanitary facilities supplied by the landlord.

234.   Defendant Parklane Management Company and Defendant Howell maintain the premises in a manner hazardous to the health and safety of the tenant.

235.   Plaintiff gave his landlord three (3) days written notice, listing each failure or breach upon which this action is premised and written demand requiring performance or cure.

236.   Defendant Parklane Management Company breached the agreement and violated Idaho Code § 6-320 by failing to timely repair the Wheelchair Lift and the Elevator.

237.   As a result of Defendants Parklane Management Company's breaches of the agreement and failures to repair, Plaintiffs have suffered damages in an exact amount to be proven at trial.

238.   Plaintiff is entitled to judgment awarding economic and noneconomic damages in an amount to be determined at trial and to judgment ordering specific performance pursuant to Idaho Code § 6-320(c).

239.   Plaintiff is entitled to reasonable attorney fees pursuant to the provisions of Idaho Code § 6-320.

FOURTH CAUSE OF ACTION

**For Breach of Contract**

*By Plaintiff Against All Defendants*

240.   Plaintiffs incorporate by reference each allegation contained herein as if set forth here verbatim.

241.   Plaintiff and Defendants entered into a binding agreement governing the tenancy. A true and correct copy of the agreement is attached hereto as Exhibit 1.  Plaintiff incorporates by reference each of the allegations included in Exhibit 1 herein as if set forth here verbatim.

242.   Defendants failed and/or refused to perform material terms of the agreement and breached the contract.

243.   As a result of Defendants' breach of the contract, Plaintiff Ahniah has been damaged.

244.   Plaintiff is entitled to actual damages, general damages, and punitive damages in an amount to be determined at trial and to reasonable attorney fees.


FIFTH CAUSE OF ACTION

**For Violations of the Idaho Consumer Protection Act
I.C. § 48-601 *et seq.***

*By All Plaintiffs Against All Defendants*

245.   Plaintiffs incorporate all preceding allegations herein by reference as though fully set forth herein.

246.   Defendants' aforesaid conduct and trade practices were unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce.

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 31

247.     Defendants knew, or should have known, that their conduct was perpetrated against a disabled person.

248.     Defendants knew, or in the exercise of due care should have known, that Defendants have in the past, or are representing that goods or services have sponsorship or approval that Defendants do not have or that Defendants have a sponsorship, approval, status, affiliation, connection, qualifications or license that Defendants do not have.

249.     Defendants knew, or in the exercise of due care should have known, that Defendants have in the past, or are representing that goods and services were of a particular standard, quality, or grade, and they were or are of another.

250.     Defendants knew, or in the exercise of due care should have known, that Defendants have in the past, or are engaging in an act or practice which is misleading, false, or deceptive to the Plaintiff.

251.     Defendants knew, or in the exercise of due care should have known, that Defendants have in the past, or are engaging in unconscionable methods, acts, or practices in the conduct of trade or commerce, as provided in section 48-603C, Idaho Code.

252.     Defendants aforesaid conduct constitutes unconscionable methods, acts, and practices in the conduct of their trade or commerce.

253.     Defendants knowingly or with reason to know, took advantage of Defendant who was reasonably unable to protect their interests because of inability to understand the agreement or a similar factor.

254.     Defendants knowingly or with reason to know, induced Plaintiff to enter into a transaction that was excessively one-sided in favor of Defendants.

255.     Defendants engaged in acts and practices that are otherwise misleading,

false, or deceptive to the consumer.

256.    Defendants' sales conduct or pattern of sales conduct outrages or offends the public conscience.

257.    On information and belief Defendants are not a regulated lender as that term is defined in section 28-41-301, Idaho Code.

258.    Plaintiffs suffered ascertainable loss of money or property, as a result of the aforesaid methods, acts, or practices.

259.    Defendants knew that their conduct caused the loss or encumbrance of a disabled person's primary residence.

260.    Defendants' aforesaid methods, acts, or practices were flagrant and repeated.

261.    Plaintiff is entitled to treat any agreement incident to Defendants' employment of a method, act or practice declared unlawful by the Idaho Consumer Protection Act as void pursuant to I.C. § 48-608(1).

262.    Plaintiff is entitled to actual damages, and an enhanced penalty of $15,000.00 or to treble actual damages, whichever is greater, pursuant to I.C. § 48-608(2).

263.    Plaintiff is entitled to attorneys fees pursuant to I.C. § 48-608(5) and to punitive damages and such equitable relief as the Court deems necessary or proper pursuant to I.C. § 48-608(1).

SIXTH CAUSE OF ACTION

**Negligence**

*By Plaintiff Against All Defendants*

264.    Plaintiffs incorporate all preceding allegations herein by reference as

though fully set forth herein.

265.    Defendants owed Plaintiff Ahniah a duty to exercise due care to operate the premises in a manner that was free from unlawful discrimination and to hire, train, supervise, and discipline their employees and agents to fulfill that duty. These Defendants negligently breached that duty by discriminating against Plaintiff based on a handicap by failing to provide him with reasonable accommodations and reasonable access to his home. These Defendants' breach of that duty was the result of negligence, including but not limited to:

A.    Their negligent failure to train their employees and agents regarding the requirements of fair housing laws;

B.    Their negligent failure to hire and/or contract persons or entities that were familiar with the requirements of fair housing laws;

C.    Their negligent failure to supervise their employees and/or agents regarding compliance with the requirements of fair housing laws; and,

D.    Their negligent failure to discipline or terminate employees and/or agents who failed to comply with the requirements of fair housing laws.

266.    Defendants owed Plaintiff a duty to exercise due care to operate the premises in a manner that was and is healthy, safe, habitable, and accessible.

267.    Defendants breached their duty of due care owed to Plaintiff as previously alleged.

268.    Defendants' breach of their duty of care owed to Plaintiff was outrageous.

269.    Defendants' breach of their duty to exercise due care owed to Plaintiff was

a cause in fact of Plaintiff's injuries.

270.   Defendants acted willfully and/or recklessly in breaching their duty to exercise due care owed to Plaintiff.

271.   As a direct and proximate result of the Defendants' negligence and/or recklessness, Plaintiff suffered physical illness and harm.

272.   As a direct and proximate result of the Defendants' negligence and/or recklessness, Plaintiff has suffered severe emotional distress and has been damaged thereby as previously alleged.

273.   As a direct and proximate result of the Defendants' negligence and/or recklessness, Plaintiff suffered economic and noneconomic damages as previously alleged.

274.   Plaintiff is entitled to actual damages and punitive damages.

## VI.   **RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.   For a declaration that Defendants have violated the Fair Housing Act, Idaho Code 6-320, and the Idaho Consumer Protection Act;

2.   For temporary, preliminary, and permanent injunctive relief ordering Defendants to immediately, and within 24 hours of judgment or order by this Court, repair and/or replace the Wheelchair Lift and elevator to such condition that both be reasonably expected to function consistently and without recurrent interruption;

3.   For temporary, preliminary, and permanent relief against all practices, breaches, and violations of law complained of herein;

4.   For the Court to enjoin the Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with said Defendants, from

failing or refusing to comply with all requirements of the Fair Housing Act and its implementing regulations;

5.     For affirmative relief pursuant to U.S.C. § 3613(c) and I.C. § 48-608(1) requiring the Defendants to: (a) arrange for and, along with their partners, agents, employees, assignees and all persons acting in concert with or participating with them, attend, at Defendants' own expense, training regarding fair housing obligations and reasonable accommodation obligations of housing providers under the Fair Housing Act and its implementing regulations; (b) within thirty (30) days of the entry of an order require Defendants to develop internal policies ensuring ongoing and future compliance with all requirements of the Fair Housing Act and its implementing regulations; (c) within thirty (30) days of the entry of an order to submit for the Court's approval an anticipatory accommodation policy including:

> i.   provision requiring Defendants to enter into an ongoing contract with third-party contractor setting repair of Idanha lift/elevator as time sensitive priority over any non-residential jobs in the Treasure Valley; and,
>
> ii.  provision that Defendants pay for BCACHA to procure an independent assessment of the condition of the wheelchair lift and elevator directing contractor to advise whether to replace and/or identify, purchase, and retain replacement parts to have immediately on hand in Boise; and,
>
> iii. provision that Defendants ensure that aid be provided to ensure Ahniah has ingress/egress within 20 minutes during the entire duration of any malfunction of either lift or elevator; and,
>
> iv.  provision that suitable and accessible alternative housing be available as close to downtown as possible; and,

    v.    provision that Ahniah's healthcare prescribed bed/padding and all other medically necessary provisions be transported to and from suitable alternative housing immediately; and,

    vi.    pre-paid transportation (Uber/Lyft or other) credit provided such that transport can be provided upon request; and,

    vii.    Defendants be immediately responsive to additional reasonable requests as necessary to afford Ahniah's independent living as the need arises.

6.    For an award of actual damages in an amount to be proven at trial;

7.    For an award trebling Ahniah's actual and compensatory damages pursuant to I.C. § 48-608(2).

8.    For Plaintiff's reasonable costs, disbursements, and attorney's fees incurred herein pursuant to 42 U.S.C. § 3613, I.C. § 48-608, and/or other applicable law;

9.    For an award of punitive damages against Defendants in an amount sufficient to punish and deter Defendants as necessary to ensure Defendants' compliance with the law given all facts and circumstances presented;

10.    The Defendants should be jointly and severally liable for any and all damages, including an award of attorney's fees and costs, awarded in this proceeding; and,

11.    For such other and further relief as to the Court deems just and equitable.

DATED this 6th day of February 2024

ERTZ JOHNSON, LLP

__/s/ Brian A Ertz_____
Brian A. Ertz
*Attorneys for Plaintiff*

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues properly triable by a jury in the above-entitled matter.

DATED this 6th day of February 2024.

ERTZ JOHNSON, LLP

/s/Brian A. Ertz_____
Brian A. Ertz
*Attorneys for Plaintiff*